Dagesse v. Esperti, et al.         CV-03-380-M    12/04/03
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Daniel S. Dagesse
and Elaine Dagesse,
      Plaintiffs

      v.                              Civil No. 03-380-M
                                      Opinion No. 2003 DNH 209
The Law Firm of Esperti, Peterson
& Cahoone; Robert A. Esperti, Esquire;
Renno L. Peterson, Esquire; and
David K. Cahoone, Esquire,
      Defendants


                        **O R D E R**


      Daniel and Elaine Dagesse bring this action against the law

firm of Esperti, Peterson & Cahoone, and three individual members

of that firm, seeking damages for breach of contract and

professional negligence (legal malpractice).  In short, they

claim to have paid defendants more than $83,000 in legal fees for

work that was never performed.


      Defendants move to dismiss plaintiffs' claims, saying the

court lacks personal jurisdiction over them.  Plaintiffs object

but, alternatively, move the court to transfer this suit to the

United States District Court for the Middle District of Florida. See 28 U.S.C. § 1631.

## Background

The material facts underlying plaintiffs' claims appear to be largely undisputed. Plaintiffs are residents of New Hampshire (they do, however, own a second home in Florida). The defendant law firm is located in Sarasota, Florida. The individual defendants are not residents of New Hampshire, nor are they licensed to practice law in this state.

In early September of 2000, plaintiffs' financial advisor recommended that they contact and retain defendants to create an estate plan. According to plaintiffs, their financial advisor arranged to have defendants contact them. Importantly, however, plaintiffs do not allege that their financial advisor was an agent or employee of defendants. Nor do they claim that he had any business relationship with defendants.

Later that month, having apparently received plaintiffs' address from the financial advisor, defendants sent a proposed

2

"Pre-Engagement Agreement" to plaintiffs at their home in Gorham, New Hampshire. Among other things, that agreement provided that plaintiffs would furnish defendants with a "Pre-Engagement Fee" of $25,000. Although plaintiffs never executed the agreement, they did send defendants a check in the amount of $25,000. According to defendants, they began a review of plaintiffs' financial affairs upon receipt of plaintiffs' check and, on October 10, 2000, met with plaintiffs in Sarasota, Florida for an all-day discussion of plaintiffs' estate planning needs.

Subsequently, defendants sent plaintiffs a copy of a "Fee Agreement" which disclosed that the fee for the estate planning services defendants proposed to provide would be $175,000, one third of which was payable upon execution of the fee agreement. Once again, plaintiffs did not sign the agreement, but, on January 3, 2001, they did send defendants an additional $58,333 (i.e., one-third of the $175,000 fee for anticipated services).

Eventually, plaintiffs concluded that defendants had made little or no progress on their financial plan. Accordingly, on March 14, 2002, plaintiffs wrote to defendants, informing them

that they "decided to take a different direction for [their] estate planning," and asking that defendants return the sums previously paid, less any reasonable amounts for work actually performed on plaintiffs' estate plan. See Exhibit C to defendants' motion to dismiss, Letter from Daniel Dagesse to David Cahoone. According to plaintiffs, defendants refused to return any of the money previously provided, pointing to the unsigned agreements as justification for their position (defendants claim the sums provided to them are "non-refundable," but neither document appears to directly address that issue).

Plaintiffs then filed suit in New Hampshire Superior Court. Defendants retained local counsel, removed the action to this court, and now seek to dismiss all plaintiffs' claims for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2).

Although plaintiffs' factual allegations are not precise, they do claim that during the course of their relationship with defendants, defendants "contacted the Plaintiffs through both the mail and telephone on numerous occasions." Plaintiffs' memorandum (document no. 6) at 7. As noted above, the individual

4

defendants are not residents of New Hampshire, nor are they licensed to practice law in this forum. And, plaintiffs do not claim that any of the individual defendants ever traveled to New Hampshire, represented other residents of this state, or solicited legal work (through advertising or other marketing efforts) in this forum. So, based on the record currently before the court, defendants' only contacts with the State of New Hampshire - two letters and an unspecified number of phone calls directed to plaintiffs - appear to have arisen out of their brief representation of plaintiffs.

**Standard of Review**

A.    <u>Statutory and Constitutional Prerequisites</u>.

It is well established that in a diversity case personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute. <u>See</u> <u>Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.</u>, 982 F.2d 686, 690 (1st Cir. 1993). And, when personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction. <u>See</u> <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995); <u>Kowalski v.</u>

Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).

Allegations of jurisdictional facts are construed in the plaintiff's favor, see Buckley v. Bourdon, 682 F. Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists.  See Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992).  Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss.  See TicketMaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  And, "[i]n reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'"  VDI Technologies v. Price, 781 F. Supp. 85, 87 (D.N.H. 1991) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987)).[1]

_____

[1]    Many of the factual allegations upon which plaintiffs rely to support their assertion that this court may properly

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant and, second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state). See Kowalski, 787 F.2d at 9-10. New Hampshire's individual long-arm statute, N.H. Rev. Stat. Ann. ("RSA") 510:4, provides jurisdiction over foreign defendants "to the full extent that the statutory language and due process will allow." Phelps v. Kingston, 130 N.H. 166, 171 (1987). Likewise, New Hampshire's corporate long-arm statute, RSA 293-A:15.10, authorizes jurisdiction over foreign corporations and unregistered professional associations to the full extent permitted by federal law. See Sawtelle, 70 F.3d at 1388. Stated another way, New Hampshire's individual and corporate long-arm statutes are coextensive with the outer limits of due process protection under the federal constitution. Accordingly, the court need only

_____

exercise personal jurisdiction over defendants appear exclusively in plaintiff's memorandum. That is to say, they are not set forth in plaintiffs' complaint nor are they alleged in affidavits. Nevertheless, the court will, for purposes of ruling on defendants' motion, accept those allegations as being true.

7

determine whether the exercise of personal jurisdiction over a foreign defendant would comport with federal constitutional guarantees.

Before a court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (citation and internal punctuation omitted). And, prior to finding that a defendant has such "minimum contacts," the court must be satisfied that the defendant's conduct bears such a "substantial connection with the forum State" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

B.    General v. Specific Jurisdiction.

A court may exercise either general or specific jurisdiction over a defendant. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Plaintiffs do not contend that defendants engaged in "continuous and systematic activity" in New Hampshire, nor do they ask the court to exercise general jurisdiction over defendants. Accordingly, if the court may properly exercise personal jurisdiction over defendants, it must be specific jurisdiction.

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts. United Elec. Workers, 960 F.2d at 1088-89. In an effort to assist trial courts in determining whether they may properly exercise specific personal jurisdiction over a defendant, the Court of Appeals has formulated a three-part test:

9

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089. An affirmative finding as to each of those three elements - relatedness, purposeful availment, and reasonableness - is necessary to support the court's exercise of personal jurisdiction over a defendant. See Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

With those principles in mind, the court turns to defendants' motion to dismiss.

## Discussion

### I. Personal Jurisdiction.

Because plaintiffs are seeking to hold their out-of-state attorneys liable for acts of professional negligence (and breach of contract), this case presents issues very similar to those in

10

<u>Sawtelle v. Farrell</u>, No. 94-392-M (D.N.H. April 28, 1995), <u>aff'd</u>, 70 F.3d 1381 (1st Cir. 1995), where this court observed:

> This case raises an issue of substantial interest to those rendering professional services previously considered local in nature, but which, due to increasing ease of travel and communication, now routinely touch or relate to distant people and jurisdictions. The precise question of law presented in this case is not entirely new, but neither is it completely settled: How much contact with a foreign client's state must a lawyer have before he or she may properly be brought before the courts of that state to answer charges of professional negligence?
>
> In this age of advanced telecommunications, it is not uncommon for a lawyer to represent a geographically distant client without meeting the client in person or traveling to the state in which the client resides. Transactions of all sorts are now routinely initiated, negotiated, and resolved via teleconference. Documents are easily generated, reviewed, edited, and transmitted by facsimile, electronic mail, or overnight express to the remotest of locations. While ease of communication has facilitated representation of distant clients, it has also raised difficult questions concerning the legitimate exercise of <u>in personam</u> jurisdiction when those distant clients seek to hale their attorneys into local forums.

<u>Sawtelle</u>, slip op. at 1-2.

### A. <u>Relatedness</u>.

To sustain their burden of proof as to the first element of the pertinent three-part test, plaintiffs must demonstrate that

11

their claims directly relate to, or arise from, defendants' contacts with this forum.  Phillips Exeter, 196 F.3d at 288.  As to their tort claim against defendants, plaintiffs must establish both causation in fact (i.e., that the injury would not have occurred 'but for' defendants' forum-state activity) and legal causation (i.e., that defendants' in-state conduct gave rise to the cause of action).  See Massachusetts Sch. of Law v. American Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998).  As to their contract claim, plaintiffs must demonstrate that defendants' forum-based activities were "instrumental in the formation of the contract." Id. (quoting Hahn v. Vermont Law Sch., 698 F.2d 48, 51 (1st Cir. 1983)).

Defendants' direction of mail and telephone calls to New Hampshire constitute forum contacts for purposes of the court's jurisdictional analysis.  Importantly, however, those contacts were neither the factual nor legal cause of plaintiffs' alleged tort injuries.  Defendants' malpractice, if any, occurred in Florida, when they (allegedly) failed to perform the services they promised, in the professional and timely manner expected of them.  That is, plaintiffs' injuries arose not from defendants'

12

conduct in, or contact with, this forum, but instead arose in Florida, where defendants allegedly failed to adequately represent plaintiffs' interests.  So, as to plaintiffs' tort claim, because defendants' telephone calls and mailings to New Hampshire were neither the factual nor legal cause of plaintiffs' injuries, that conduct cannot form the basis of this court's exercise of personal jurisdiction over defendants.  See generally Sawtelle, 70 F.3d at 1390-91.  See also Phillips Exeter, 196 F.3d at 291.

Plaintiffs' contract claim suffers the same fate.  Although defendants undeniably directed at least two contracts to New Hampshire for plaintiffs' review and execution, neither of those proposed agreements was ever signed.  And, even if plaintiffs' had executed those contracts in New Hampshire, "the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." Phillips Exeter, 196 F.3d at 290 (citing Burger King, 471 U.S. at 478-79).  See also United States v. Swiss American Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001) ("A contract is but an

13

intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.  A contract, by itself, cannot automatically establish minimum contacts.")(citation and internal punctuation omitted).

Instead, the court must focus on what the court of appeals has described as a "contract-plus" analysis, id., under which "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Burger King, 471 U.S. at 479.  See also Ganis Corp. of California v. Jackson, 822 F.2d 194, 197-98 (1st Cir. 1987).  Here, as noted above, defendants did not advertise in New Hampshire, nor did they direct any sort of solicitations to New Hampshire residents. Instead, plaintiffs contacted defendants through (and on the recommendation of) their personal financial planner.  And, neither plaintiffs nor defendants could have reasonably anticipated that any part of defendants' performance under their

14

agreement with plaintiffs would take place in New Hampshire (even defendants' meeting with plaintiffs took place in Florida).

Defendants' breach, if any, took place in Florida, when they failed to work on or produce the estate plan for which plaintiffs contracted. In light of those facts, the court is compelled to conclude that plaintiffs have failed to establish a prima facie case of "relatedness" based upon their contract claim.

B. Purposeful Availment.

Even if plaintiffs had established the first of the three essential elements of personal jurisdiction, they have failed to carry their burden of proof with regard to the second element - that defendants "purposefully availed" themselves of the rights and privileges of doing business in New Hampshire. In determining whether plaintiffs have satisfied that element, the court must focus on whether they have shown that defendants "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." Sawtelle, 70 F.3d at 1391 (citation omitted).

15

Here, as in Sawtelle, defendants' contacts with New Hampshire are quite limited: they sent two proposed contracts to plaintiffs in New Hampshire and they allegedly directed an unspecified number of telephone calls to plaintiffs. Those contacts alone are, however, an insufficient basis upon which to rest the exercise of personal jurisdiction over defendants.

> [T]he contacts of the defendants with New Hampshire were limited, consisting primarily of written and telephone communications with the clients in the state where they happened to live.
>
> The mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required. In this case, the defendant-attorneys' only connection with New Hampshire was the [plaintiffs'] residence there.

Id. at 1391-92 (citations omitted). Thus, plaintiffs have failed to satisfy their burden of demonstrating "purposeful availment" as well.

II. Transfer to Cure Want of Jurisdiction.

Having found that personal jurisdiction over defendants is lacking, the court next turns to plaintiffs' motion to transfer this suit to the United States District Court for the Middle

16

District of Florida.  Whenever a court concludes that it lacks jurisdiction over a civil action (or the parties to that action):

> the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.  Defendants do not oppose transfer and, given the fact that section 1631 reflects Congress's intent "to create a presumption - albeit a rebuttable one - in favor of transfer," Britell v. United States, 318 U.S. 70, 73 (1st Cir. 2003), transfer, rather than dismissal, is appropriate.


## Conclusion

Given plaintiffs' failure to satisfy their burden of proof with regard to either the "relatedness" or "purposeful availment" prong of the relevant jurisdictional test, the court cannot conclude that the exercise of personal jurisdiction over defendants would be proper.  But, because transfer, rather than dismissal of this action, is warranted, defendants' motion to dismiss (document no. 4) is denied.  The Clerk of Court shall

transfer this case to the United States District Court for the Middle District of Florida.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 4, 2003

cc:  Jack P. Crisp, Jr., Esq.
     Steven E. Grill, Esq.

18