COMMONWEALTH *vs.* RENE ARMENIA.

Worcester.    June 9, 1975. — January 16, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Motor Vehicle,* Unauthorized use.  *Burglarious Instruments.  Pleading, Criminal,* Indictment or complaint.  *Intent.  Way,* Public.

At the trial of an indictment charging the defendant with violating G. L. c. 266, § 28, the judge erred in denying the defendant's motion for a directed verdict where the Commonwealth failed to prove that the defendant's unauthorized operation of an automobile after revocation of his license occurred "on a way." [35-38]

At the trial of an indictment under G. L. c. 266, § 49, evidence that the defendant was seated in the driver's seat of an automobile and that a screwdriver and inertial hammer were on the floor of the automobile was insufficient to warrant a finding that the defendant had possession of the tools with the intent to use them to steal from a "depositor[y] ... such money and other property as might be found therein." [38-39]

Two INDICTMENTS found and returned in the Superior Court on November 13, 1973.

The cases were tried before *Tisdale,* J.

The case was submitted on briefs.

*Conrad W. Fisher* for the defendant.

*William T. Buckley,* District Attorney, & *John D. Keeton, Jr.,* Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from his convictions on two indictments, one charging that he "did upon a way without authority of the owner, operate a motor vehicle after notice of the revocation of his right to operate ha[d] been issued [pursuant to G. L. c. 90, § 22]" (see G. L. c. 266, § 28[1]) and the other charging him with possession of burglarious instruments (G. L. c. 266, § 49[2]).

---

[1] General Laws c. 266, § 28, provides: "Whoever steals a motor vehicle or trailer, or receives or buys a motor vehicle or trailer knowing the same to have been stolen, or conceals any motor vehicle or trailer thief knowing him to be such, or conceals any motor vehicle or trailer knowing the same to have been stolen, or takes a motor vehicle or trailer without the authority of the owner and steals from it any of its parts or accessories, *or without the authority of the owner operates a motor vehicle after notice of the suspension or revocation of his license or right to operate has been issued by the registrar in accordance with section twenty-two of chapter ninety and prior to the restoration of such license or right to operate or to the issuance to him of a new license to operate,* shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in jail or house of correction for not more than two and one half years or by a fine of not more than five thousand dollars, or both ..." (emphasis supplied).

[2] General Laws c. 266, § 49, provides in pertinent part: "Whoever ... knowingly has in his possession, an engine, machine, tool or implement adapted and designed for cutting through, forcing or breaking open a building, room, vault, safe or other depository, in order to steal there-

There was evidence that at approximately 3:30 A.M. on February 24, 1973, two State police officers observed an automobile, its motor running, in a parking area adjacent to a building known as the Worcester summer police station. There were two men inside the vehicle. As the officers approached the automobile, the defendant jumped out of the driver's seat and ran. The second person was unconscious in the passenger's seat. After a short chase, one of the officers caught the defendant and returned him to the automobile. The officers noted that the ignition switch had been removed and was lying on the floor of the front seat, together with an inertial hammer, also called a "slaphammer," a device legitimately found in automobile body shops but which can be used for punching out ignition switches and automobile trunk locks. There was also a screwdriver on the floor. At the trial the Commonwealth introduced a certified copy of the revocation of the defendant's right to operate a motor vehicle.

*I. The Indictment Under G. L. c. 266, § 28.*

The defendant argues that his motions for a directed verdict, filed at the close of the Commonwealth's case and again at the end of the defendant's case, should have been allowed on the ground (among others with which we need not concern ourselves) that the Commonwealth failed to prove that the unauthorized operation after revocation of license occurred "on a way." We agree.

Although the Commonwealth charged operation "on a way," it made no attempt to prove the crime as thus charged. Cf. *Commonwealth* v. *Hayden*, 354 Mass. 727, 728-729 (1968), and cases cited. It introduced no evidence indicating the circumstances under which the automobile had been taken (or from where) and from which it might

---

from money or other property, or to commit any other crime, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ or allow the same to be used or employed for such purpose ... shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than one thousand dollars and imprisonment in jail for not more than two and one half years."

have been inferred that the automobile had previously been driven by the defendant into the parking area from a public way. The Commonwealth relied on a bare stipulation "that the owner gave no authority to anybody to operate this motor vehicle." Indeed, from the judge's charge, it appears that — with the acquiescence of the Commonwealth — the issue whether the defendant had operated "on a way" was not even submitted to the jury. The Commonwealth tried its case on the footing that the area in which the automobile was found was one to which the public had access as invitees or licensees. See G. L. c. 90, § 24. We need not decide whether it produced sufficient evidence to permit the case to go to the jury on that issue[3] because, even if it had done so, it would have availed the Commonwealth nothing in view of the specific allegation of the indictment that the defendant had operated a vehicle "on a way." "A criminal offence must be proved as charged." *Commonwealth* v. *Langenfeld,* 1 Mass. App. Ct. 813, 814 (1973), citing *Commonwealth* v. *Ancillo,* 350 Mass. 427, 430 (1966).

The Commonwealth's primary emphasis in its brief now is that it was not required to prove that the operation occurred on a way since that is not an element of the crime as described in the statute. (See fn. 1.) The prosecution cites *Commonwealth* v. *Boos,* 357 Mass. 68 (1970), in which the Supreme Judicial Court held that the citation procedure of G. L. c. 90, § 2, has no application to the

---

[3] The Commonwealth does not now contend that it introduced sufficient evidence even on this issue in its own case, though the defendant's motion for directed verdict after the Commonwealth rested is before us for decision. The Commonwealth's brief points only to testimony on cross-examination given by the defendant's wife, who was called by the defendant. Since in our view that evidence is not material to the charge in the indictment, it is not necessary for us to deal with the question left open in *Commonwealth* v. *Ferguson,* 365 Mass. 1, 10, fn. 6, which arises when "the evidence at the close of the Commonwealth's case is such that a directed verdict of acquittal could then have been properly granted but was in fact denied, and the defendant, choosing not to rest on the Commonwealth's case, offers evidence which supplies deficiencies in the Commonwealth's case, and supports a conviction."

crime of unauthorized use after revocation of license in G. L. c. 266, § 28, since this section deals with crimes against property in contrast to G. L. c. 90, which is "different in substance and scope. The 'main purpose [of c. 90] was to govern the operation of motor vehicles upon ways.'" *Id.* at 70, quoting *Opinion of the Justices,* 250 Mass. 591, 601 (1925).

The Commonwealth's view is quite persuasive, for the other crimes listed in G. L. c. 266, § 28, obviously are not concerned with whether they occurred on a way (see fn. 1). And, indeed, St. 1926, c. 267, § 1, which first made operating without authority after revocation of license an offense under G. L. c. 266, § 28, also added to the list of crimes in § 28 taking an automobile without authority and stealing parts or accessories from it.[4]

However, in *Commonwealth* v. *Guerro,* 357 Mass. 741, 750 (1970), decided about four months after the *Boos* case, the court said, "[T]he elements of the crime of unauthorized operation after the right to operate has been suspended [or revoked] are operation of the vehicle by the defendant without authority of the owner *on a public way* after his license has been suspended by the Registry of Motor Vehicles..." (emphasis supplied). This appears in connection with a close analysis of the statute made for the purpose of comparing the elements of the crime of receiving a stolen automobile (see fn. 1) with the elements of the offense of unauthorized use after license suspension or revocation. The court further emphasized that the various provisions of § 28 are separate — "that each offence

---

[4] Statute 1926, c. 267, also made changes in G. L. c. 90, § 23, which had made it a crime to operate a motor vehicle after revocation of license. Other changes in c. 90 were made in 1926 by c. 253. See also St. 1926, c. 203, amending G. L. c. 266, § 63. For other material indicating the background concerns in 1926 see recommendations of the Police Commissioner for the City of Boston, 1926 House Doc. No. 38, p. 4; Governor's Address, 1926 Senate Doc. No. 1, p. 6, and passim; "'Crime Week' at the State House and the Results", p. 1 et seq. (reprinted in 11 Mass. L.Q. [4], 1926); Goodwin, Community vs. Criminal, passim, especially pp. 5-6, 23 (reprinted in 11 Mass. L.Q. [4], 1926). See also Circular Letter of the Administrative Committee of the District Courts, p. 90 (reprinted in 12 Mass. L.Q. [2], 1927).

enumerated in the various clauses is a separate offence." We therefore believe ourselves bound to reject the Commonwealth's argument that unauthorized use after license revocation is not concerned with the place of operation.

*II. The Indictment Under G. L. c. 266, § 49.*

This indictment charged the defendant with possession of "certain machines, tools, and implements adapted and designed for cutting through, forcing and breaking open buildings, rooms, vaults and safes or other depositories, in order to steal therefrom such money and other property as might be found therein ... intending to use and employ them therefor." See G. L. c. 277, § 79. The indictment did not charge the defendant with possession of such tools or implements for the purpose of "commit[ting] any other crime" (see fn. 2) "intending to use ... them therefor." See *Commonwealth* v. *Krasner,* 358 Mass. 727, 729-732 (1971), *S.C.,* 360 Mass. 848 (1971). The Commonwealth, having failed to charge that the defendant had possession of the tools or implements, intending to use them to commit "any other crime", e.g. the crime charged in the companion indictment or for that matter the crime of auto theft (cf. *Commonwealth* v. *Salerno,* 356 Mass. 642, 648 [1970]), it is confined to proving possession of the tools or implements with the intent to use them to steal from a "depositor[y] ... such money and other property as might be found therein." An automobile trunk can be found to be a "depository." *Commonwealth* v. *Tilley,* 306 Mass. 412, 416 (1940). Whether the automobile itself may be a "depository" was not decided in that case. Nor need we decide the question, for even if an automobile, apart from the trunk, may be a "depository" the Commonwealth must prove an intent to steal *from* the automobile in order to prove the crime charged in the indictment.

The jury may of course infer the requisite specific intent from conduct. But there is nothing in the evidence from which an inference of such an intent would be more than speculation. Unlike the circumstances in the *Tilley* case, there is nothing to indicate that there was any property in

the automobile or the trunk or that the defendant thought there was. The possession of the screwdriver and the inertial hammer apparently used to punch out the ignition switch — without anything beyond the evidence that the defendant was in the driver's seat with the motor running and ran when he saw the police — is at least as consistent with an intent to use the automobile without authority as with an intent to steal from the vehicle. See *Commonwealth* v. *Kelly*, 1 Mass. App. Ct. 441, 449-450 (1973), citing (among other cases) *Commonwealth* v. *Croft*, 345 Mass. 143, 144 (1962), and *Commonwealth* v. *Ross*, 339 Mass. 428, 431 (1959).

Breaking into an automobile merely with the intent to use it is not so "remote according to the ordinary course of events" (*Commonwealth* v. *Doherty*, 137 Mass. 245, 247 [1884] [Holmes, J.]) as to allow us to discount such an intent in this case and permit the jury to conclude that there was an intent to steal from the automobile merely from the breaking. Contrast *Commonwealth* v. *Wygrzywalski*, 362 Mass. 790, 792 (1973), citing *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 81 (1955), and *Commonwealth* v. *Eppich*, 342 Mass. 487, 493 (1961), in which the much greater likelihood of an intent to steal contents when breaking into a house or building creates a presumption of such an intent.

*Judgment reversed and verdict
set aside on each indictment.*

*Judgment to be entered for the
defendant on each indictment.*