COMMONWEALTH vs. ROBERT P. MURPHY.

Middlesex. December 5, 1990. - April 3, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Motor Vehicle*, License to operate. *Practice, Criminal*, Complaint. *Statute*, Construction. *Due Process of Law*, Vagueness of statute. *Words*, "Way."

A criminal complaint charging the defendant under G. L. c. 90, § 23, with operating a motor vehicle after his license had been revoked was sufficient, without alleging that he operated the motor vehicle on a public way, to withstand the defendant's motion to dismiss for failure to state a crime. [666-669] O'CONNOR, J., with whom LYNCH, J., joined, dissenting.

COMPLAINT received and sworn to in the Ayer Division of the District Court Department on January 20, 1989.

On appeal to the jury session of the Lowell Division, a motion to dismiss was heard by *Neil J. Colicchio*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Judith Knight*, Assistant District Attorney, for the Commonwealth.

*Michael Najjar* for the defendant.

*Gregory P. Turner*, amicus curiae, submitted a brief.

*Thomas A. Wirtanen*, amicus curiae, submitted a brief.

ABRAMS, J. The defendant, Robert P. Murphy, was charged under G. L. c. 90, § 23, with operating a motor vehicle after his license had been suspended. At issue is whether the complaint is defective and must be dismissed for failure to allege that he operated the motor vehicle *on a public way*. We hold that the statute does not require that the violation occur on a public way.

The parties stipulated that had the case gone to trial, the Commonwealth would have attempted to prove the following facts. On December 22, 1988, Officer Michael Perron of the Westford police department was driving on Littleton Road in Westford when he noticed the tail lights of a moving automobile in a store parking lot. Knowing that the store was closed, and that stolen cars had been left in the area on two prior occasions, he entered the lot. He observed the automobile parked partially behind the building with its engine running. The defendant was seated in the driver's seat and a female companion in the passenger seat. Perron approached the vehicle, and asked to see the defendant's license and registration. The defendant responded that he had forgotten his license. On checking with the Registry of Motor Vehicles, Perron discovered that the Commonwealth had revoked the defendant's license for driving under the influence of intoxicating liquors and had not reinstated the license.

The defendant was arrested and convicted in a bench trial of a violation of G. L. c. 90, § 23. He appealed to a jury-of-six session in the Lowell Division of the District Court Department. He then filed a motion to dismiss for failure to state a crime because there was no allegation he operated a motor vehicle on a public way. The judge granted the motion on June 12, 1989. The Commonwealth appeals. See Mass. R. Crim. P. 13 (c), 378 Mass. 871 (1979); Mass. R. Crim. P. 15 (a) (1), 378 Mass. 882 (1979).

General Laws c. 90, § 23, provides, in relevant part: "Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked . . . and prior to the restoration of such license . . . shall . . . be punished . . . ." The statute does not restrict such prohibited motor vehicle operation to any particular location. The defendant contends that we should nevertheless rule that an element of the crime set forth in the statute is that the operation occurred on a "way."[1]

---

[1] "Way" is defined in G. L. c. 90, § 1 (1988 ed.), as "any public highway, private way laid out under authority of statute, way dedicated to public use, or way under the control of park commissioners or body having like powers."

"When the meaning of a statute is brought into question, a court properly should read other sections and should construe them together . . . ." *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n,* 394 Mass. 233, 240 (1985). Chapter 90, § 23, originally was enacted in 1903. See St. 1903, c. 473, § 9. In addition to the section penalizing the operation of an automobile after revocation or suspension of a license, the Legislature also provided that "no automobile or motor cycle shall . . . be operated *upon any public highway or private way laid out under authority of statute* unless registered," St. 1903, c. 473, § 3, and that "no person shall . . . operate an automobile or motor cycle *upon any public highway or private way laid out under authority of statute* unless licensed so to do," St. 1903, c. 473, § 5 (emphasis added). Other sections of c. 90 also specify where the operation of a motor vehicle may or may not occur. See, e.g., G. L. c. 90, § 3 (motor vehicles owned by nonresidents "may be operated on the ways of this Commonwealth"); § 3A (nonresident accepts service upon registrar by operating motor vehicle "on a way, or private way if entrance thereto was made from a way, or in any place to which the public has a right of access"); § 10 (forbidding person under age of sixteen from operating a vehicle "upon any way"); and § 24 (forbidding operation of vehicle "upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees" while under the influence of drugs or alcohol). Clearly, the Legislature knew how to specify a location of operation, and could have done so in the provision in question had it intended to penalize only those operations on a public way.

The wording of the statute indicates that the Legislature intended that operation of a motor vehicle anywhere in the Commonwealth after license suspension or revocation would be forbidden. The Legislature chose not to limit the application of the statute to public ways. Such an intention ration-

ally reflects the penal purposes of the license revocation. Thus, even though in the first instance a driver need obtain a license only if he or she wishes to operate a motor vehicle on a "way," see G. L. c. 90, § 10, the Legislature in § 23 determined that the suspension or revocation of a license deprived the individual of a right to operate a motor vehicle anywhere in the Commonwealth.

Our construction answers the defendant's argument that the statute is void for vagueness. "[A] law is not vague if its meaning is ascertainable by reference to similar or related statutes . . . . Further, even a vague statute may be made constitutionally definite by giving it a reasonable construction." (Citations omitted.) *Commonwealth* v. *Sefranka*, 382 Mass. 108, 111 (1980). The statute clearly prohibits the operation anywhere of a motor vehicle by a person whose license has been suspended or revoked.

The defendant asserts that *Commonwealth* v. *Guerro*, 357 Mass. 741 (1970), and *Commonwealth* v. *Armenia*, 4 Mass. App. Ct. 33 (1976), require a construction of the statute which limits its application to public ways. We do not agree. In *Guerro*, we analyzed a similarly-worded provision of a different statute, G. L. c. 266, § 28, as amended through St. 1966, c. 191, § 2.[2] The provision punished "[w]hoever . . . without the authority of the owner operates a motor vehicle after notice of the suspension or revocation of his license or right to operate has been issued by the registrar." In *Guerro*, the question was whether a different provision in § 28 criminalizing the knowing receipt of a stolen automobile was a lesser included offense in the provision criminalizing the unauthorized use. In comparing the elements of the two provisions, the court stated that the elements of unauthorized operation are "operation of the vehicle by the defendant without authority of the owner *on a public way* after his license has been suspended by the Registry of Motor Vehi-

---

[2] General Laws c. 266, § 28, was rewritten in 1980 and no longer includes that particular provision. St. 1980, c. 463, § 4.

cles" (emphasis added). *Id.* at 750. The "public way" ele-
ment, recited by the court even though not specified in the
statute, was not crucial to the holding of the case and is
therefore dictum. Further, the *Guerro* statute and the statute
at issue are entirely different in purposes and effect. General
Laws c. 90 establishes a comprehensive scheme for register-
ing automobiles and licensing drivers, while G. L. c. 266
punishes certain crimes against property, including the theft
and concealment of automobiles.

In *Commonwealth* v. *Armenia, supra,* the Appeals Court
held that G. L. c. 266, § 28, applied only to unauthorized
motor vehicle operation occurring on a public way. The court
declared itself "bound to reject" the Commonwealth's argu-
ment (which it had deemed "quite persuasive") that G. L.
c. 266, § 28, was not concerned with place of operation be-
cause of *Guerro. Id.* at 37-38. The holding in *Armenia* was
grounded on dictum in *Guerro,* which we decline to follow in
the context of G. L. c. 90, § 23. Therefore, *Armenia* does not
support the defendant's argument.

Because the Legislature did not require "public way" as
an element of the crime, the complaint was sufficient. We
remand the case to the District Court for further proceedings
consistent with this opinion.

*So ordered.*

O'CONNOR, J. (dissenting, with whom Lynch, J., joins).
General Laws c. 90, § 23 (1988 ed.), should not be construed
as criminalizing the operation of a motor vehicle after sus-
pension or revocation of the operator's license except when
the operation occurs on a "way" as defined in G. L. c. 90, §
1 (1988 ed.). There, a "way" is defined as "any public high-
way, private way laid out under authority of statute, way
dedicated to public use, or way under the control of park
commissioners or body having like powers." Since the com-
plaint in this case failed to allege that the defendant's opera-
tion after suspension or revocation occurred on a "way," the

complaint, in my view, was fatally defective. I agree with the District Court judge that dismissal of the complaint was appropriate.

General Laws c. 90, § 10 (1988 ed.), provides that "[n]o person under sixteen years of age shall operate a motor vehicle *upon any way*," and that "[n]o other person shall so operate unless licensed . . . ." (emphasis added). Section 10 also provides that "no person shall operate *on the ways* of the commonwealth any motor vehicle . . . if the registrar shall have suspended or revoked" his or her license (emphasis added). Furthermore, there is no Massachusetts statute prohibiting operation of a motor vehicle without a license at a location that is not a "way" within the statutory definition. The obvious purpose of our licensing statute, recognized in our cases, is "to make the roads more safe and convenient for travellers by preventing unlicensed persons from operating motor vehicles thereon. The purpose of licensing operators of automobiles is to make it reasonably certain that the licensee is qualified for the task and a proper person to be licensed. G. L. c. 90, §§ 8, 10." *Gordon* v. *Bedard*, 265 Mass. 408, 412 (1929). "These statutes [c. 90, §§ 9, 10] were enacted for the safety of the public . . . ." *MacLean* v. *Neipris*, 304 Mass. 237, 240 (1939).

Therefore, despite the absence of express language in c. 90, § 23, limiting the reach of that section to the operation of motor vehicles on "ways" after license suspension or revocation, it is highly unlikely that the Legislature intended that that section should apply to the operation of a motor vehicle in places to which the public has no right of access. As the court correctly states, "[w]hen the meaning of a statute is brought into question, a court properly should read other sections and should construe them together . . . ." *Ante* at 667, quoting *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 240 (1985). A reading of the several sections of c. 90 together clearly demonstrates that the Legislature's concern to which the entire statute and all its parts are directed is public safety on public

highways and at places to which the public has a right of access. I recognize that, in G. L. c. 90, § 24, which prohibits operating a motor vehicle while under the influence of intoxicating liquor or controlled substances, the Legislature explicitly limited the application of the statute to "any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees," and that no such express language appears in § 23, but it is unreasonable to suppose that the Legislature intended to prohibit driving after suspension or revocation of license even in a private individual's back yard, the result required by this decision, while at the same time allowing drunken driving in such a place.

The court's reply appears to be twofold: First, "the Legislature knew how to specify a location of operation, and could have done so in the provision in question had it intended to penalize only those operations on a public way." *Ante* at 667. Second, the "Legislature chose not to limit the application of [§ 23] to public ways [as a rational reflection of] the penal purposes of the license revocation." *Ante* at 667-668. With respect to the court's first assertion, of course it is true that the Legislature did not expressly include in § 23 the public way type of language that is found generally throughout the statute, and that is one indication of legislative intent. However, it is shallow thinking to rest exclusively on that one indicator when there are, as here, many other more substantive indicators that persuasively show that the Legislature did not intend by § 23 to criminalize driving after suspension or revocation of a license at a place where no license was required in the first place.

The court's second assertion, that application of c. 90, § 23, to private as well as public places, rationally reflects "the penal purpose of the license revocation" is incorrect. The power of license suspension and revocation rests with the Registrar of Motor Vehicles. G. L. c. 90, § 22 (1988 ed.). It would be highly unusual for the Legislature to vest in the Registrar the power of punishment — a sort of sentencing

power. The court cites neither a statute nor a case that even suggests that license suspension and revocation is penal in nature. Indeed, c. 90, § 22 (*a*), provides that "[t]he registrar may suspend or revoke . . . any license . . . whenever the holder thereof has committed a violation of the motor vehicle laws of a nature which would give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety . . . ." Section 22 (*b*) provides that "[t]he registrar may . . . suspend or revoke any . . . license . . . when he has reason to believe the holder thereof is an incompetent person to operate motor vehicles, or is operating a motor vehicle improperly." It is clear that § 22 is not designed to punish, but rather is designed only to promote public safety by the removal of dangerous drivers, culpable or not, from the road.

The court notes that in *Commonwealth v. Guerro*, 357 Mass. 741 (1970), we were required to construe G. L. c. 266, § 28, as amended through St. 1966, c. 191, § 2. In that case, the court construed the provision, "[w]hoever . . . without the authority of the owner operates a motor vehicle after notice of the suspension or revocation of his license or right to operate has been issued by the registrar," as addressing "operation . . . on a public way" after license suspension. *Id.* at 750. Whether dictum or not, the court's interpretation of c. 266, § 28, was an authoritative interpretation of statutory language almost identical to the language at issue here. It should be noted, too, despite the court's assertion that "the *Guerro* statute and the statute at issue are entirely different in purposes and effect," *ante* at 669, that the relevant language in both statutes was inserted by the same act of the Legislature, St. 1926, c. 267. Statute 1926, c. 267, § 1, amended G. L. c. 266, § 28, to add as a separate crime use without authority after suspension or revocation of license. Statute 1926, c. 267, § 2, amended G. L. c. 90, § 23, to make it read in relevant part: "Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked . . . shall . . . be punished." If St. 1926, c. 267, § 1,

was implicitly limited to operation on a public way, so was c. 267, § 2.

"Violation of G. L. c. 90, § [23], as amended, is a crime for which a penalty is imposed . . . . Penal statutes, though important in the interest of public safety, are construed strictly." *Peabody* v. *Campbell*, 286 Mass. 295, 304 (1934). No citation of authority is necessary to demonstrate that the rule of strict construction of criminal statutes is deeply imbedded in our law. It recognizes the fairness of clear warning to everyone "of what the law intends to do if a certain line is passed," *McBoyle* v. *United States*, 283 U.S. 25, 27 (1931), and it also recognizes the "plain principle that the power of punishment is vested in the legislative, not in the judicial department." *United States* v. *Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820). Even assuming that reasonable argument can be made in support of a construction of G. L. c. 90, § 23, as prohibiting the operation of a motor vehicle anywhere after suspension or revocation of license, surely a reasonable argument also can be made and, I suggest, has been made above, that the Legislature intended § 23 to apply only to operation of a motor vehicle on "ways" as defined by c. 90, § 1. If the rule that criminal statutes must be strictly construed, that is, that ambiguities must be resolved against the Commonwealth, is still operative in Massachusetts, as it surely ought to be, c. 90, § 23, must be construed as applicable only to "ways."

The complaint included the language of c. 90, § 23, but it did not allege that the defendant operated a motor vehicle on a way, or a public way, or at a place to which the public has a right of access. I submit that operation on such a way or place is an essential element of the crime of operating a motor vehicle after revocation or suspension of license. Therefore, the complaint omits any reference to an essential element of the crime sought to be charged. "When the statutory language does not include all the elements of the crime, it neither describes the act which constitutes the crime, nor defines the crime," *Commonwealth* v. *Palladino*, 358 Mass. 28, 30 (1970), and therefore is fatally deficient under Mass.

R. Crim. P. 4 (a), 378 Mass. 849 (1979). *Commonwealth* v. *Burns*, 8 Mass. App. Ct. 194 (1979).

I would affirm the order dismissing the complaint.